UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

    - v. -                        :

                                  :

PETER J. RICCIO,                  :
LENA LASHER,                      :
 a/k/a "Lena Contang,"           :
JOHN NICHOLAS BURLING,            :
ROBERT P. IMBERNINO,              :
EDMOND S. KAPLAN,                 :
TIMOTHY KEAR,                     :
CHRISTOPHER RILEY,                :
ADAM RISOLIA,                     :
GERGANA CHERVENKOVA, and          :
PAUL GRYSZKIEWICZ,                :

         Defendants.        :

                                  :

- - - - - - - - - - - - - - - - x

**SEALED INDICTMENT**

DATE FILED: NOV 2 2012
DOC #:
ELECTRONICALLY FILED
DOCUMENT
USDC SDNY

12 CR 868

## COUNT ONE

### (NARCOTICS CONSPIRACY)

The Grand Jury charges:

RELEVANT PERSONS AND ENTITIES

    1.   At all times relevant to this Indictment, PETER J. RICCIO, the defendant, was a licensed pharmacist and owned and operated at least three pharmacies, one in New Jersey and two in Pennsylvania ("Pharmacy-1," "Pharmacy-2," and "Pharmacy-3," collectively, the "RICCIO Pharmacies").

    2.   At all times relevant to this Indictment, LENA LASHER, a/k/a "Lena Contang," the defendant, was the "Pharmacist in Charge" at both Pharmacy-2 and Pharmacy-3.

3.    At all times relevant to this Indictment, JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, and EDMOND S. KAPLAN, the defendants, were licensed physicians, located in South Carolina, California, and New York, New York, respectively.

4.    At all times relevant to this Indictment, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, operated websites (the "Prescription Websites") on which customers ordered controlled and non-controlled substances, the dispensing of which required a valid prescription (the "Prescription Drugs"), including, but not limited to, Fioricet, Soma and Ultram (and/or their generic forms), all of which are pain medications.

THE INTERNET PHARMACY SCHEME

5.    From at least in or about 2010, up to and including in or about November 2012, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, engaged in a scheme to sell, distribute, and dispense Prescription Drugs over the Internet, and to deliver those Prescription Drugs to customers, without the issuance of valid prescriptions.  Specifically, customers received Prescription

2

Drugs by ordering from the Prescription Websites without ever seeing or speaking to a physician or a medical practitioner, rendering the prescriptions invalid.  In the course of the scheme (the "Internet Pharmacy Scheme"):

a.    A customer would visit one of the Prescription Websites offering certain Prescription Drugs for sale.

b.    The Prescription Websites were operated by various individuals and/or companies (the "Website Operators"), including TIMOTHY KEAR and CHRISTOPHER RILEY, the defendants, who operated the same company, the identity of which is known to the Grand Jury; and ADAM RISOLIA, GERGANA CHERVENKOVA, PAUL GRYSZKIEWICZ, the defendants, and others, each of whom operated distinct companies, the identities of which are known to the Grand Jury.

c.    On a Prescription Website, the customer chose which Prescription Drugs he or she wished to order, and completed an online medical questionnaire in which the customer was asked a series of questions regarding his or her medical history.  The questionnaires on the Prescription Websites often contained "yes" or "no" questions and required the customer to mark a "yes" or "no" box for the appropriate answer.  The answers to these questions were often prepopulated with the answer that did not disqualify the customer from receiving the Prescription Drugs that he or she

3

ordered.

d.    The Prescription Websites often contained misrepresentations regarding the issuance of the prescription following the completion of the online medical questionnaire.   For example:

i.    A website operated by a company of PAUL GRYSZKIEWICZ, the defendant, stated: "Please note that our U.S. Licensed Physician requires that all Pain, Sleep/Stress/Anxiety, Muscle Relaxers, and Migraine Headache medications include a doctor consultation."  However, customers purchased and received certain Prescription Drugs, including pain medications, muscle relaxers, and migraine headache medications, by ordering from GRYSZKIEWICZ's website without receiving a doctor consultation.

ii.    A website operated by a company of GERGANA CHERVENKOVA, the defendant, stated: "Just like your local pharmacy, they [referring to 'our participating pharmacies'] require a valid prescription from a physician licensed to practice in your area of residence."  However, by placing orders on CHERVENKOVA's website, customers received certain Prescription Drugs based solely on their completion of online medical questionnaires.  Further, these prescriptions were often issued by physicians who did not practice in the customers' areas of residence.

4

e.    The Website Operator would then send the completed online medical questionnaire by electronic means to a doctor (the "Issuing Doctor"), including JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, the defendants, and others known and unknown.

f.    The Issuing Doctor issued a prescription for the drug requested by the customer, without first conducting an in-person medical examination of the customer, speaking with the customer, reviewing medical records of the customer, or otherwise verifying any of the information provided by the customer, who often was not located in the same state as the Issuing Doctor.

g.    The Website Operator would then send the issued prescription by electronic means to a pharmacy (the "Filling Pharmacy"), including the RICCIO Pharmacies, and others known and unknown, to be filled.  After filling the prescription, the Filling Pharmacy would send the Prescription Drugs to the customer, who was often not in the same state as the Filling Pharmacy, via the United States Postal Service, or by other delivery methods, such as Federal Express or United Parcel Service.  Certain of the customers who received Prescription Drugs ordered from the Prescription Websites and filled and sent by the RICCIO Pharmacies were located in the Southern District of New York.

h.    At the time the customer ordered the drugs, the customer would pay for the Prescription Drugs by credit card on the Prescription Website, or later by cash or check upon delivery of the Prescription Drugs.

6.    At all times relevant to this Indictment, PETER J. RICCIO and LENA LASHER, a/k/a "Lena Contang," the defendants, billed Website Operators, including TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, for prescriptions the RICCIO Pharmacies filled on behalf of the Website Operators.  The Website Operators would then pay RICCIO and LASHER by wiring funds from certain bank accounts controlled by the Website Operators to certain bank accounts controlled by RICCIO and/or LASHER.  During the course of the Internet Pharmacy Scheme, bank accounts controlled by RICCIO and/or LASHER have received in excess of $13,000,000 from Website Operators, including KEAR, RILEY, RISOLIA, CHERVENKOVA, GRYSZKIEWICZ, and others known and unknown.

7.    At all times relevant to this Indictment, NICHOLAS BURLING, ROBERT P. IMBERNINO, and EDMOND S. KAPLAN, the defendants, and others known and unknown, were paid by Website Operators via wire transfer for their issuance of prescriptions for customers who ordered Prescription Drugs from the Prescription Websites.  During

the course of the Internet Pharmacy Scheme, JOHN NICHOLAS BURLING, the defendant, received wire transfers in excess of $150,000 from Website Operators; ROBERT P. IMBERNINO, the defendant, received wire transfers in excess of $400,000 from Website Operators; and EDMOND S. KAPLAN, the defendant, received wire transfers in excess of $100,000 from Website Operators, including from bank accounts located in Cyprus, Hong Kong, and Israel.

<u>STATUTORY ALLEGATIONS</u>

8.    From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

9.    It was a part and an object of the conspiracy that PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, would

and did deliver, distribute, and dispense controlled substances by means of the Internet and did aid and abet said activity in a manner not authorized by Subchapter I of Chapter 13 of Title 21, United States Code, in violation of 21 U.S.C. § 841(h)(1)(A)-(B).

10.   The controlled substance involved in the offense was Butalbital, a Schedule III controlled substance, in violation of 21 U.S.C. § 841(b)(1)(E).

### Overt Acts

11.   In furtherance of the conspiracy and to effect the illegal object thereof, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about April 20, 2012, CHERVENKOVA caused the processing of an order placed by an undercover law enforcement agent ("UC-1") over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

b.   In connection with the order described in paragraph 11(a), on or about April 25, 2012, RICCIO caused Pharmacy-1 to send a package containing 132 tablets of Butalbital to UC-1 in

New York, New York via the United States Postal Service.

        c.    On or about May 24, 2012, GRYSZKIEWICZ caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

        d.    In connection with the order described in paragraph 11(c), on or about June 5, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 119 tablets of Butalbital to an address in New York, New York via the United States Postal Service.

        e.    On or about May 29, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

        f.    In connection with the order described in paragraph 11(e), on or about June 2, 2012, RICCIO caused Pharmacy-1 to send a package containing 123 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

        g.    On or about June 11, 2012, GRYSZKIEWICZ caused the processing of an order placed by UC-1 over the Internet for 90 tablets of Butalbital, the dispensing of which requires a valid prescription.

h.    In connection with the order described in paragraph 11(g), on or about June 15, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 93 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

i.    On or about July 16, 2012, KAPLAN issued a prescription for Butalbital, the dispensing of which requires a valid prescription, based solely on the completion of an online medical questionnaire by an undercover law enforcement agent ("UC-2"), without ever conducting an in-person medical evaluation of, or otherwise consulting with UC-2.

j.    In connection with the prescription described in paragraph 11(i), on or about July 18, 2012, RICCIO and LASHER caused Pharmacy-3 to send a package containing 93 tablets of Butalbital to UC-2 in New York, New York via the United States Postal Service.

(Title 21, United States Code, Section 846.)

## COUNT TWO

### (NARCOTICS DISTRIBUTION)

The Grand Jury further charges:

12.   The allegations set forth in paragraphs One through Seven are incorporated by reference as if set forth fully herein.

13.   From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, did deliver, distribute, and dispense controlled substances by means of the Internet, and did aid and abet said activity, in such a manner not authorized by Subchapter I of Chapter 13 of Title 21, United States Code.

14.   The controlled substance involved in the offense was Butalbital, a Schedule III controlled substance, in violation of 21 U.S.C. § 841(b)(1)(E).

(Title 21, United States Code, Sections 841(b)(1)(E) and 841(h)(1)(A)-(B).)

## COUNT THREE

### (CONSPIRACY TO MISBRAND)

The Grand Jury further charges:

15.   The allegations set forth in paragraphs One through Seven are incorporated by reference as if set forth fully herein.

16.   From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and

elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the laws of the United States.

17.   It was a part and an object of the conspiracy that PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, would and did introduce and deliver for introduction into interstate commerce, with the intent to defraud and mislead, misbranded drugs, as defined by 21 U.S.C. § 353(b), in violation of 21 U.S.C. § 331(a).

Overt Acts

18.   In furtherance of the conspiracy and to effect the illegal object thereof, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, committed the following overt acts, among others, in

the Southern District of New York and elsewhere:

      a.    On or about February 14, 2011, KEAR and RILEY caused a wire transfer in the amount of approximately $5,466 to be sent from a bank account in Delaware to a bank account controlled by RICCIO and LASHER in Pennsylvania, via New York, New York.

      b.    On or about August 4, 2011, RISOLIA caused a wire transfer in the amount of approximately $10,465 to be sent from a bank account in Florida to a bank account controlled by RICCIO and LASHER in Pennsylvania, via New York, New York.

      c.    On or about August 9, 2011, a co-conspirator not named as a defendant herein ("Website Operator-1") caused the processing of an order placed by an undercover law enforcement agent ("UC-3") over the Internet for 90 tablets of Carisoprodol, the dispensing of which requires a valid prescription.

      d.    In connection with the order described in paragraph 18(c), on or about August 12, 2011, RICCIO caused Pharmacy-1 to send a package containing 90 tablets of Carisoprodol to UC-3 in New York, New York via the United States Parcel Service.

      e.    On or about October 26, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the Internet for 90 tablets of Soma, the dispensing of which requires a valid prescription.

f.   In connection with the order described in paragraph 18(e), on or about November 2, 2011, RICCIO and LASHER caused Pharmacy-2 to send a package containing 90 tablets of Soma to UC-3 in New York, New York via the United States Postal Service.

g.   On or about November 14, 2011, IMBERNINO received a wire transfer in the amount of approximately $7,312 sent from a bank account in Hong Kong to a bank account in California, via New York, New York.

h.   On or about April 20, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

i.   In connection with the order described in paragraph 18(h), on or about April 25, 2012, RICCIO caused Pharmacy-1 to send a package containing 132 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

j.   On or about May 24, 2012, GRYSZKIEWICZ caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital.

k.   In connection with the order described in paragraph 18(j), on or about June 5, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 119 tablets of Butalbital

14

to an address in New York, New York via the United States Postal Service.

l.    On or about May 29, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

m.    In connection with the order described in paragraph 18(l), on or about June 2, 2012, RICCIO caused Pharmacy-1 to send a package containing 123 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

n.    On or about June 11, 2012, GRYSZKIEWICZ caused the processing of an order placed by UC-1 over the Internet for 90 tablets of Butalbital, the dispensing of which requires a valid prescription.

o.    In connection with the order described in paragraph 18(n), on or about June 15, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 93 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

p.    On or about July 16, 2012, KAPLAN issued a prescription for Butalbital, the dispensing of which requires a valid prescription, based solely on UC-2's completion of an online medical questionnaire, without ever conducting an in-person medical

evaluation of, or otherwise consulting with UC-2.

        q.    In connection with the prescription described in paragraph 18(p), on or about July 18, 2012, RICCIO and LASHER caused Pharmacy-3 to send a package containing 93 tablets of Butalbital to UC-2 in New York, New York via the United States Postal Service.

        r.    On or about July 19, 2012, BURLING received a wire transfer in the amount of approximately $3,382 sent from a bank account in Israel to a bank account in South Carolina, via New York, New York.

        (Title 18, United States Code, Section 371.)

## COUNT FOUR

### (MISBRANDING)

The Grand Jury further charges:

19.    The allegations set forth in paragraphs One through Seven are incorporated by reference as if set forth fully herein.

20.    From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL

GRYSZKIEWICZ, the defendants, with the intent to defraud and mislead, did introduce and deliver for introduction into interstate commerce drugs, to wit, various controlled and non-controlled substances requiring a valid prescription for dispensing, including, but not limited to Fioricet, Soma, and Ultram (and/or their generic forms), which when introduced and delivered for introduction into interstate commerce were misbranded within the meaning of 21 U.S.C. § 353(b), in that they were dispensed without valid prescriptions.

   (Title 21, United States Code, Sections 331(a), 333(a)(2), and
        353(b); Title 18, United States Code, Section 2.)

## COUNT FIVE

### (MAIL AND WIRE FRAUD CONSPIRACY)

The Grand Jury further charges:

21.   The allegations set forth in paragraphs One through Seven are incorporated by reference as if set forth fully herein.

22.   From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire,

confederate, and agree together and with each other to commit mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

23.  It was a part and an object of the conspiracy that PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carrier, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code,

Section 1341.

24.   It was further a part and an object of the conspiracy that PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, willfully and knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Overt Acts

25.   In furtherance of the conspiracy and to effect the illegal objects thereof, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about August 9, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the

Internet for 90 tablets of Carisoprodol, the dispensing of which requires a valid prescription.

        b.   In connection with the order described in paragraph 25(a), on or about August 12, 2011, RICCIO caused Pharmacy-1 to send a package containing 90 tablets of Carisoprodol to UC-3 in New York, New York via the United States Parcel Service.

        c.   On or about October 26, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the Internet for 90 tablets of Soma, the dispensing of which requires a valid prescription.

        d.   In connection with the order described in paragraph 25(c), on or about November 2, 2011, RICCIO and LASHER caused Pharmacy-2 to send a package containing 90 tablets of Soma to UC-3 in New York, New York via the United States Postal Service.

        e.   On or about November 14, 2011, IMBERNINO received a wire transfer in the amount of approximately $7,312 sent from a bank account in Hong Kong to a bank account in California, via New York, New York.

        f.   On or about April 20, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

g.    In connection with the order described in paragraph 25(f), on or about April 25, 2012, RICCIO caused Pharmacy-1 to send a package containing 132 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

h.    On or about May 24, 2012, GRYSZKIEWICZ caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

i.    In connection with the order described in paragraph 25(h), on or about June 5, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 119 tablets of Butalbital to an address in New York, New York via the United States Postal Service.

j.    On or about May 29, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

k.    In connection with the order described in paragraph 25(j), on or about June 2, 2012, RICCIO caused Pharmacy-1 to send a package containing 123 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

l.    On or about June 11, 2012, GRYSZKIEWICZ

caused the processing of an order placed by UC-1 over the Internet for 90 tablets of Butalbital, the dispensing of which requires a valid prescription.

m.    In connection with the order described in paragraph 25(1), on or about June 15, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 93 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

n.    On or about July 16, 2012, KAPLAN issued a prescription for Butalbital, the dispensing of which requires a valid prescription, based solely on UC-2's completion of an online medical questionnaire, without ever conducting an in-person medical evaluation of, or otherwise consulting with UC-2.

o.    In connection with the prescription described in paragraph 25(n), on or about July 18, 2012, RICCIO and LASHER caused Pharmacy-3 to send a package containing 93 tablets of Butalbital to UC-2 in New York, New York via the United States Postal Service.

p.    On or about July 19, 2012, BURLING received a wire transfer in the amount of approximately $3,382 sent from a bank account in Israel to a bank account in South Carolina, via New York, New York.

(Title 18, United States Code, Section 1349.)

22

## COUNT SIX

### (MONEY LAUDERING CONSPIRACY)

The Grand Jury further charges:

26.   The allegations set forth in paragraphs One through Seven are incorporated by reference as if set forth fully herein.

27.   From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, and GERGANA CHERVENKOVA, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

28.   It was a part and an object of the conspiracy that PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, and GERGANA CHERVENKOVA, the defendants, and others known and unknown, would and did transport, transmit, and transfer and attempt to transport, transmit, and transfer a monetary instrument and funds to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified

unlawful activity, to wit, narcotics distribution, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## Overt Acts

29.   In furtherance of the conspiracy and to effect the illegal object thereof, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, and GERGANA CHERVENKOVA, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about February 14, 2011, KEAR and RILEY caused a wire transfer in the amount of approximately $5,466 to be sent from a bank account in Delaware to a bank account controlled by RICCIO and LASHER in Pennsylvania, via New York, New York.

b.   On or about August 9, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the Internet for 90 tablets of Carisoprodol, the dispensing of which requires a valid prescription.

c.   In connection with the order described in paragraph 29(b), on or about August 12, 2011, RICCIO caused Pharmacy-1 to send a package containing 90 tablets of Carisoprodol to UC-3 in New York, New York via the United States Parcel Service.

d.   On or about October 26, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the Internet for 90 tablets of Soma, the dispensing of which requires a valid prescription.

e.   In connection with the order described in paragraph 29(d), on or about November 2, 2011, RICCIO and LASHER caused Pharmacy-2 to send a package containing 90 tablets of Soma to UC-3 in New York, New York via the United States Postal Service.

f.   On or about November 14, 2011, IMBERNINO received a wire transfer in the amount of approximately $7,312 sent from a bank account in Hong Kong to a bank account in California, via New York, New York.

g.   On or about April 20, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

h.   In connection with the order described in paragraph 29(g), on or about April 25, 2012, RICCIO caused Pharmacy-1 to send a package containing 132 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

i.   On or about June 5, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 119 tablets of

Butalbital, the dispensing of which requires a valid prescription, to an address in New York, New York via the United States Postal Service.

        j.   On or about May 29, 2012, CHERVENKOVA caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

        k.   In connection with the order described in paragraph 29(j), on or about June 2, 2012, RICCIO caused Pharmacy-1 to send a package containing 123 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

        l.   On or about June 15, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 93 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

        m.   On or about July 16, 2012, KAPLAN issued a prescription for Butalbital, the dispensing of which requires a valid prescription, based solely on UC-2's completion of an online medical questionnaire, without ever conducting an in-person medical evaluation of, or otherwise consulting with UC-2.

        n.   In connection with the prescription described in paragraph 29(m), on or about July 18, 2012, RICCIO and

LASHER caused Pharmacy-3 to send a package containing 93 tablets of Butalbital to UC-2 in New York, New York via the United States Postal Service.

o.   On or about July 19, 2012, BURLING received a wire transfer in the amount of approximately $3,382 sent from a bank account in Israel to a bank account in South Carolina, via New York, New York.

(Title 18, United States Code, Section 1956(h).)

## COUNT SEVEN

### (MONEY LAUDERING CONSPIRACY)

The Grand Jury further charges:

30.   The allegations set forth in paragraphs One through Seven are incorporated by reference as if set forth fully herein.

31.   From at least in or about 2010, up to and including in or about November 2012, in the Southern District of New York and elsewhere, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," ROBERT P. IMBERNINO, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

32.   It was a part and an object of the conspiracy that PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," ROBERT P. IMBERNINO, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, narcotics distribution, mail fraud, and wire fraud, with the intent to promote the carrying on of specified unlawful activity, to wit, narcotics distribution, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

### Overt Acts

33.   In furtherance of the conspiracy and to effect the illegal object thereof, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," ROBERT P. IMBERNINO, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, and PAUL GRYSZKIEWICZ, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about February 14, 2011, KEAR and RILEY caused a wire transfer in the amount of approximately $5,466 to be

sent from a bank account in Delaware to a bank account controlled by RICCIO and LASHER in Pennsylvania, via New York, New York.

b.    On or about August 4, 2011, RISOLIA caused a wire transfer in the amount of approximately $10,465 to be sent from a bank account in Florida to a bank account controlled by RICCIO and LASHER in New Jersey, via New York, New York.

c.    On or about August 9, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the Internet for 90 tablets of Carisoprodol, the dispensing of which requires a valid prescription.

d.    In connection with the order described in paragraph 33(c), on or about August 12, 2011, RICCIO caused Pharmacy-1 to send a package containing 90 tablets of Carisoprodol to UC-3 in New York, New York via the United States Parcel Service.

e.    On or about October 26, 2011, Website Operator-1 caused the processing of an order placed by UC-3 over the Internet for 90 tablets of Soma, the dispensing of which requires a valid prescription.

f.    In connection with the order described in paragraph 33(e), on or about November 2, 2011, RICCIO and LASHER caused Pharmacy-2 to send a package containing 90 tablets of Soma to UC-3 in New York, New York via the United States Postal Service.

g.    On or about November 14, 2011, IMBERNINO received a wire transfer in the amount of approximately $7,312 from a bank account in Hong Kong to a bank account in California, via New York, New York.

h.    On or about April 25, 2012, RICCIO caused Pharmacy-1 to send a package containing 132 tablets of Butalbital, the dispensing of which requires a valid prescription, to UC-1 in New York, New York via the United States Postal Service.

i.    On or about May 24, 2012 GRYSZKIEWICZ caused the processing of an order placed by UC-1 over the Internet for 120 tablets of Butalbital, the dispensing of which requires a valid prescription.

j.    In connection with the order described in paragraph 33(i), on or about June 5, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 119 tablets of Butalbital to an address in New York, New York via the United States Postal Service.

k.    On or about June 2, 2012, RICCIO caused Pharmacy-1 to send a package containing 123 tablets of Butalbital, the dispensing of which requires a valid prescription, to UC-1 in New York, New York via the United States Postal Service.

l.    On or about June 11, 2012, GRYSZKIEWICZ

30

caused the processing of an order placed by UC-1 over the Internet for 90 tablets of Butalbital, the dispensing of which requires a valid prescription.

      m.    In connection with the order described in paragraph 33(1), on or about June 15, 2012, RICCIO and LASHER caused Pharmacy-2 to send a package containing 93 tablets of Butalbital to UC-1 in New York, New York via the United States Postal Service.

      n.    On or about July 18, 2012, RICCIO and LASHER caused Pharmacy-3 to send a package containing 93 tablets of Butalbital to UC-2 in New York, New York via the United States Postal Service.

      (Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

### (NARCOTICS OFFENSES)

      34.  As a result of committing one or both of the controlled substance offenses alleged in Counts One and Two of this Indictment, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, shall forfeit to the United States pursuant to 21 U.S.C. § 853, any and all property constituting or

31

derived from any proceeds the said defendants obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the said violations.

(Title 21, United States Code, Sections 841(a)(1), 846, and 853.)

### (MISBRANDING OFFENSES)

35.   As a result of committing the misbranding offenses alleged in Counts Three and Four of this Indictment, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 334, and Title 28, United States Code, Section 2461, any article of food, drug or cosmetic involved in the commission of said offenses.

(Title 21, United States Code, Section 334; Title 28, United States Code, Section 2461.)

### (MAIL AND WIRE FRAUD OFFENSE)

36.   As a result of committing the mail and wire fraud offense alleged in Count Five of this Indictment, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO,   EDMOND   S.   KAPLAN,   GERGANA   CHERVENKOVA,   and   PAUL

GRYSZKIEWICZ, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offense.

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461.)

### (MONEY LAUNDERING OFFENSES)

37.  As a result of committing one or more of the money laundering offenses charged in Counts Six and Seven of this Indictment, PETER J. RICCIO, LENA LASHER, a/k/a "Lena Contang," JOHN NICHOLAS BURLING, ROBERT P. IMBERNINO, EDMOND S. KAPLAN, TIMOTHY KEAR, CHRISTOPHER RILEY, ADAM RISOLIA, GERGANA CHERVENKOVA, and PAUL GRYSZKIEWICZ, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in said offenses and all property traceable to such property.

(Title 18, United States Code, Section 982(a)(1).)

### (SUBSTITUTE ASSET PROVISION)

38.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due

33

diligence;

        b.   has been transferred or sold to, or deposited with, a third person;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 18 U.S.C. § 981, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461, to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

PETER J. RICCIO,
LENA LASHER, a/k/a "Lena Contang,"
JOHN NICHOLAS BURLING,
ROBERT P. IMBERNINO,
EDMOND S. KAPLAN,
TIMOTHY KEAR,
CHRISTOPHER RILEY,
ADAM RISOLIA,
GERGANA CHERVENKOVA,
and PAUL GRYSZKIEWICZ,

Defendants.

SEALED INDICTMENT

12 Cr.

(21 U.S.C. §§ 331, 333, 352, 812, 813,
841, 846; 18 U.S.C. §§ 2, 371, 1349,
1956(h).)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.